# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

RICHARD NANEZ )
                                )
v.                            )       No.  3:08-1118
                                )       JUDGE CAMPBELL
UNITED STATES OF AMERICA )

## MEMORANDUM

### I.  Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence and Memorandum Of Law In Support (Docket Nos. 1, 2), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se.  The Government has filed a Response to the Motion. (Docket No. 12).

The Court has reviewed the pleadings and briefs filed by both parties, the record of Petitioner's underlying conviction, and the entire record in this case.  For the reasons set forth below, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

### II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged in an Indictment with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); and with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two).  (Docket No. 33 in Case No. 3:02-00054). Three other defendants were also named in the Indictment. (Id.)  Two of the co-defendants, Araevia C. Garcia and Luis Miguel Avila, pled guilty to Count Two prior to trial. (Docket Nos.

69, 104, 118, 143 in Case No. 3:02-00054). The Petitioner attempted to plead guilty, but the Court rejected the plea as presented. (Docket Nos. 112, 158 in Case No. 3:02-00054).

At the conclusion of a three-day trial, the Petitioner and co-defendant Kevin C. Neal were convicted of both Count One and Count Two. (Docket Nos. 136, 137, 138 in Case No. 3:02-00054). At the subsequent sentencing hearing, the Court sentenced the Petitioner to a total term of 240 months of imprisonment. (Docket Nos. 174, 175, 176, 198 in Case No. 3:02-00054).

The Petitioner appealed his sentence, and the Sixth Circuit vacated his sentence and remanded for re-sentencing, based on United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed2d 621 (2005), which was decided while the case was pending on appeal. (Docket Nos. 179, 181, 204 in Case No. 3:02-00054); United States v. Richard Nanez and Kevin C. Neal, 168 Fed. Appx. 72, 2006 WL 388299 (6th Cir. Feb. 21, 2006)).

On remand, the Court re-sentenced the Petitioner to 240 months. (Docket Nos. 222, 223 in Case No. 3:0200054). The Petitioner again appealed his sentence and the Sixth Circuit affirmed. (Docket Nos. 224, 228 in Case No. 3:0200054; United States v. Richard Nanez, 2007 WL 2386474 (6th Cir. Aug. 21, 2007)).

Petitioner was originally represented by John Oliva. (Docket Nos. 4, 6, 28 in Case No. 3:02-00054). Prior to trial, Petitioner requested and was granted new counsel, Bob Lynch, Jr. (Docket Nos. 89, 90, 93, 94 in Case No. 3:02-00054). After his sentencing hearing, Petitioner again requested and was granted new counsel, F. Clinton Broden, to represent him on appeal. (Docket Entries on Feb. 17, 2004 and Feb. 23, 2004 in Case No. 3:02-00054). After the conclusion of his first appeal, the Court replaced Mr. Broden with Paul Bruno, who represented the Petitioner at the re-sentencing hearing, and during his second appeal. (Docket Nos. 209, 211

in Case No. 3:02-00054).

In its first opinion, the Sixth Circuit presented the relevant facts as follows:

Richard Nanez sold bags containing a half-gram of cocaine or less from his Houston, Texas bar. At his bar, Nanez met Rafael "Angel" Benavides around January 15, 2002 and discussed an ongoing drug sale in which Nanez would supply Benavides with three-to-five kilograms of cocaine per week. Because Nanez had never dealt in such large quantities, he had to locate a source before finalizing the deal. Nanez secured a source and quoted Benavides a price of $24,000 per kilogram. Benavides balked at the price, and Nanez cut it to $21,000 per kilogram. Benavides considered the counteroffer and told Nanez he would get back to Nanez about the deal.

Before Benavides could make a decision about the deal with Nanez, Benavides was arrested by Nashville Police and began cooperating with the government. Nashville Police joined its efforts with the United States Attorney for the Middle District of Tennessee. Benavides informed the police of his pending deal in Houston with Nanez, and the government began investigating Nanez.

Benavides called Nanez under the pretext of consummating the deal. He agreed to purchase three kilograms of cocaine from Nanez for $21,000 per kilogram if Nanez delivered the drugs to Nashville. The deal stalled when Nanez could not locate his usual courier. He assured Benavides that there would be no further delays and told him he was traveling to Nashville to insure that the deal would be completed. The logistics of delivery were worked out by Benavides and Nanez during several telephone calls, all of which were monitored by the government.

Nanez recruited two people for the Nashville drug deal: Mike Avila and Kevin Neal. Nanez hired Mike Avila to transport the cocaine to Nashville, concealed in the gas tank of his car. Nanez agreed to pay Avila $1,000 for every kilogram of cocaine he delivered and told him to anticipate delivering five kilograms per week. Nanez hired Neal for $500 to share the driving responsibilities on Nanez's trip to Nashville.

Nanez and Neal arrived in Nashville before the cocaine was delivered. Neal met Benavides and an undercover police detective, Jesse Burchwell in a McDonald's parking lot. Benavides was wearing a body wire, and he and Burchwell were communicating with Assistant United States Attorney ("AUSA") Sunny Koshy. Neal waited at his hotel room at the Shoney's Inn. By this time, he had discerned the purpose of the Nashville trip, and both he and Nanez were upset that the delivery was late.

The following day, Nanez and Neal arranged another meeting with Benavides

3

and Burchwell at a Longhorn Steakhouse. The cocaine still had not arrived. Nanez told Benavides and Burchwell that his driver was running late because he had made other drug drops en route from Houston. Burchwell began to question whether the deal would be completed, and Neal assured him that it would. Neal and Nanez also began discussing future deals with Benavides and Burchwell. Nanez told them that they would have to order at least five kilograms of cocaine in the future to get better prices. Both Nanez and Neal quoted prices in the range of $17,000 to $19,000 per kilogram. Neal also discussed marijuana dealing and plans to get his drug-dealing business with Nanez off the ground. He indicated to Burchwell that he was going to buy a GMC Yukon Denali as soon as he and Nanez got the business up and running.

After the meeting at the Longhorn ended, Nanez and Neal returned to their hotel room. There they met Avila, who had transported the cocaine, but he was short one kilogram. Nevertheless, Nanez contacted Benavides and Burchwell to proceed with the deal. Nanez explained the shortage and promised to deliver the additional kilogram to Nashville three days later. The group proceeded to an apartment with a garage so the cocaine could be extracted from the gas tank. The group traveled to the apartment in separate cars. Avila drove Neal in the car that contained the drugs, and Benavides and Burchwell drove Nanez.

In the car, Benavides, Burchwell, and Nanez discussed future cocaine deals. Burchwell knew that he had to get Nanez to agree to a sale of at least five kilograms of cocaine because he had asked AUSA Sonny Koshy over his wire what was needed for a conviction. In response to Burchwell's "tell me what Sonny needs," Koshy had advised Burchwell that it did not matter whether the sale was for five or ten kilograms. Nevertheless, Burchwell got Nanez to commit to a ten-kilogram, $180,000 sale. The sale was to take place the following Thursday in Houston with Benavides and Burchwell picking up the drugs. Upon arriving at the apartment, Nanez told Neal about the deal he had made. At that time, Neal held himself out as Nanez's "fifty-fifty partner" in the drug trade.

Avila fished the cocaine out of his gas tank, and Burchwell cut open the food-saver bags to test it and learned that gasoline had soaked through the sealed package. Despite the gas saturation, the deal went forward. Benavides and Burchwell paid $42,000, $21,000 for each of the two kilograms supplied. Nanez counted the money, and Neal recounted it after Nanez thought Benavides and Burchwell had overpaid. Once the transaction was complete, Burchwell signaled for the arrests of Nanez, Neal, and Avila.

Nanez and Neal were charged with violations of 21 U.S.C. § 841, possession of 500 or more grams of cocaine with the intent to distribute, and 21 U.S.C. § 846, conspiracy to distribute five or more kilograms of cocaine. Nanez and Neal proceeded to trial after trying unsuccessfully to plead guilty. Both were convicted

4

after raising entrapment defenses and claiming that AUSA Koshy had taken an inappropriate role in their investigation and arrests. They were sentenced to 240 months in prison after the sentencing court considered presentence reports and applied the United States Sentencing Guidelines ("Guidelines") and statutory minima. Nanez and Neal appeal their sentences, and Neal challenges his conviction.

United States v. Nanez, 168 Fed.Appx. at 74-75, 2006 WL 388299, at ** 1-2.[1]

---

[1]    In the second appeal, the Sixth Circuit summarized the facts relating to the Petitioner as follows:

In January or February of 2002, Richard Benavides approached Nanez at a bar in Houston, Texas, and inquired about the possibility of arranging the purchase of cocaine. The two discussed the possibility of Nanez's providing Benavides with three to five kilograms of cocaine on a weekly basis. According to Benavides, Nanez agreed to sell him three to five kilograms of cocaine weekly, but Nanez informed Benavides that he could only provide a first installment of two to three kilograms. On February 15, 2002, before Benavides and Nanez reached final agreement on price, Benavides was arrested by Detective Mike Clark of the Nashville Police Department. Following his arrest, Benavides agreed to cooperate with the authorities.

On February 17, 2002, Benavides contacted Nanez, and they arranged for the delivery of three kilograms of cocaine to Benavides in Nashville for a total price of $63,000. Nanez hired Luis Avila to transport the cocaine from Houston to Nashville. At Nanez's direction, Avila drove to Odessa, Texas, where he met an unidentified supplier who provided him with two kilograms of cocaine. As directed, Avila divided the cocaine into two one-kilogram packages and placed them in the gas tank of his vehicle. Avila then recruited his girlfriend, Aravia Garcia, to assist him in the drive to Nashville. Nanez also traveled to Nashville to consummate the first transaction and recruited an associate, Kevin Neal, to drive him from Houston to Nashville in exchange for $500. Nanez and Neal arrived in Nashville on February 23, 2002, and met with an undercover law enforcement officer, Detective Jesse Burchwell, and Benavides. On the following day, Avila and Garcia arrived in Nashville with the cocaine, and Nanez informed Burchwell and Benavides that he was one kilogram short of the agreed upon three but assured them he would provide the missing kilogram. Nanez, Burchwell, Benavides, Neal, Avila, and Garcia then proceeded to an apartment set up by the police to serve as a location for the transfer. FN1 After arriving at the apartment, Nanez consummated the two kilogram transaction. Police officers moved in and arrested Nanez, Neal, Garcia, and Avila.

Case 3:08-cv-01118   Document 13   Filed 05/19/09   Page 5 of 21 PageID #: 107

III. <u>Analysis</u>

A. <u>The Petitioner's Claims</u>

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.

B. <u>The Section 2255 Remedy/Evidentiary Hearing Not Required.</u>

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[2] The statute does not provide a remedy,

---

FN1 While riding with Burchwell and Benavides, Nanez discussed a future transaction whereby Burchwell would come to Houston to purchase ten kilograms of cocaine the following Thursday.

A grand jury issued a two-count indictment charging Nanez with conspiring to distribute five kilograms or more of a controlled substance in violation of 21 U.S.C. § 846 and possession with intent to distribute 500 grams or more of a controlled substance in violation of 21 U.S.C. § 841(a)(1). A jury convicted Nanez on both counts, and the district court sentenced him to 240 months imprisonment followed by five years of supervised release. Nanez appealed his sentence, and a panel of this court vacated his sentence in light of <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and remanded his case for resentencing. <u>United States v. Nanez (Nanez I)</u>, 168 F. App'x 72, 79 (6th Cir.2006). Following remand, the district court reimposed the same sentence imposed initially. Nanez timely appealed.

<u>United States v. Nanez,</u> 2007 WL 2386474, at ** 1.

[2] 28 U.S.C. § 2255 states, in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

6

however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also conducted the trial, he may rely on his recollections of the trial. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255; Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court has reviewed all the files, records, transcripts and correspondence filed in the proceeding underlying Petitioner's conviction, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the

7

Petitioner to show: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

The objective standard of reasonableness "is a highly deferential one and includes a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Campbell, 364 F.3d at 730 (quoting Mason v. Mitchell, 320 F.3d 604, 616-17 (6th Cir. 2003). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 S.Ct. at 694; Ivory v. Jackson, 509 F.3d 284, 294 (6th Cir. 2007).

As the Supreme Court has explained, a court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. Strickland, 466 S.Ct. at 697; Ivory, 509 F.3d at 294. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Petitioner first complains that Mr. Lynch failed to investigate the law and facts relating to his case. Specifically, Petitioner argues that a proper investigation would have uncovered the following: that he did not have a criminal history; that he was not the source of the drugs; that the parties promised to deliver three kilograms but only delivered two kilograms; that AUSA Koshy's direct, hands-on personal involvement in the investigation established a basis to "challenge Koshy as a witness or seek recusal"; that Petitioner was financially destitute and did not have the resources or capability of consummating a five-plus kilogram transaction, and

8

lacked any other means to obtain greater quantities of cocaine; that a factual basis existed to support Petitioner's plea and it was an abuse of discretion to reject the plea; and that Rule 11 prohibits a federal district judge's involvement in plea negotiations. (Petitioner's Memorandum of Law, at 19 (Docket No. 2)). Petitioner also claims that a proper investigation would have revealed mitigation evidence regarding Petitioner's personal and family matters, and the requirements of pleas and plea agreements under Rule 11. (Id.)

Petitioner also claims that Mr. Lynch failed to effectively communicate with him. Specifically, Petitioner claims that counsel failed to consult with him regarding: his trial and plea options, including the option to enter an open plea; the Court's offer to continue the case after the Court rejected Petitioner's plea; moving for reconsideration of the plea, and whether the Court's rejection of Petitioner's plea was error. Petitioner claims that counsel failed to advise him that he would still be contesting the amount of cocaine at trial, an element of guilt; that he would be denied reduction for acceptance of responsibility if he went to trial; and that he could seek severance from co-defendant Neal. Petitioner claims that Mr. Lynch failed to explain his "advice that Petitioner's case was 'pregnant with appeal issues.'" (Petitioner's Memorandum, at 29). Petitioner claims that counsel consistently advised him that "all you can get is ten years." (Id.) Petitioner also claims that counsel wrongfully advised him that he would only be allowed to make the sentencing entrapment argument if he went to trial. Finally, Petitioner claims that counsel failed to advise him that he did not have criminal defense experience. (Petitioner's Memorandum, at 29-30).

Petitioner's claim that counsel failed to investigate his criminal history and the circumstances of the offense is contradicted by the record. Trial counsel presented a defense at

trial that focused on the Petitioner's lack of a criminal background, as well as his lack of intent

and ability to deal in the quantities of cocaine charged in the Indictment, and specifically argued

that Petitioner was entrapped by law enforcement officers. (Trial Transcript, Vol. III, at 591-94).

Counsel also presented similar arguments at sentencing, including Petitioner's lack of criminal

history, the overstatement of the quantity of cocaine for which he should be held responsible,

and mitigation evidence regarding his personal and family life. (Transcript of Trial, Vol. III, at

527-543 (Docket No. 161 in Case No. 3:02-00054); Transcript of Sentencing Hearing, at 5- 31

(Docket No. 198 in Case No. 3:02-00054); Rule 32(c)(1) Findings and Determinations

Regarding Objections To Presentence Investigation Report, at 1-3 (Docket No. 176 in Case No.

3:02-00054)). As Petitioner does not otherwise identify possible defenses that should have been

presented by trial counsel, this claim is without merit.

 Petitioner's argument that counsel failed to investigate or advise him as to the possibility

of entering a guilty plea also is unsupported by the record.  Prior to trial, Mr. Lynch submitted to

the Court, on behalf of the Petitioner, a petition to enter a guilty plea to Count Two, and to the

lesser included offense of possession with intent to distribute less than five kilograms of cocaine

with respect to Count One.  (Transcript of Hearing on March 31, 2003, at 9-30 (Docket No. 196

in Case No. 3:02-00054); Transcript of Hearing on April 1, 2003, at 2-12 (Docket No. 158 in

Case No. 3:02-00054)).  Counsel also proposed a limited bench trial on the quantity of cocaine

involved in Count One. (Id.)  The Court rejected the proposed guilty plea because it would not

require the Petitioner to plead guilty to the essential elements of Count One, specifically the

quantity of cocaine alleged in the Indictment. (April 1, 2003 Transcript, at 11-12).

 To the extent Petitioner argues that counsel should have challenged the Court's rejection

of the plea or should have argued that the Court became involved in plea negotiations, Petitioner

fails to suggest upon what basis counsel should have based these arguments. The Court rejected the guilty plea because it found that the proposal was not legally valid, and did not attempt to mediate between the parties.

Petitioner argues that he would have entered an open plea to the Indictment had counsel explained that possibility and the benefit of applying acceptance of responsibility points to reduce his offense level. First, Petitioner's suggestion that counsel failed to explain that an acceptance of responsibility reduction would result from a guilty plea is contradicted by the transcript of the attempted guilty plea hearings. At those hearings, counsel discussed the quandary he found himself in – by pleading guilty, his client would receive the benefit of an acceptance of responsibility reduction, but Petitioner was prepared to admit only to a quantity of less than five kilograms, specifically, two kilograms, of cocaine on Count One. (March 31, 2003 Transcript, at 10, 23; April 1, 2003 Transcript, at 2-12). There is no support for Petitioner's claim that counsel failed to understand or explain that an acceptance of responsibility reduction would accompany a guilty plea.[3]

To the extent Petitioner claims that he would have pled guilty to the charges in the Indictment without a plea agreement, through an "open plea," and challenge the quantity of drugs at sentencing, there is no evidence, other than Petitioner's self-serving allegation, that Petitioner was willing to plead guilty to five kilograms or more of cocaine as alleged in Count One. Indeed, at trial, Petitioner testified that while he admitted guilt to a conspiracy involving two kilograms of cocaine, he disputed any charge involving more than that amount. (Trial

---

[3] The Court also made it clear at the conclusion of the hearing that "the court has no opinion at this point as to how that will affect acceptance of responsibility or not, but certainly none of that's waived." (April 1, 2003 Transcript, at 12).

Transcript, Vol. III, at 390-91).[4]

Petitioner's suggestion that counsel failed to explain the option of entering an open plea is contradicted by the fact that the guilty plea as proposed by counsel was, in fact, an attempt to enter an open plea in that it was not based on a plea agreement. (April 1, 2003 Transcript, at 8-9). An actual open plea would have required the Petitioner to plead guilty to the quantity of cocaine alleged in Count One, and as discussed above, the Petitioner refused to do so.

Petitioner's claim that counsel wrongfully advised him that he would only be able to argue sentencing entrapment if he went to trial implies that he would have pled guilty had he known he could do so and still argue sentencing entrapment at the sentencing hearing. The Court initially questions the credibility of Petitioner's claim that he did not understand he could raise a *sentencing* entrapment argument at his *sentencing* hearing. In any event, as discussed above, there is no credible evidence in the record that Petitioner would have pled guilty to the quantity alleged in Count One even if he had known that a sentencing entrapment argument would be available at sentencing. Accordingly, counsel was not deficient for any failure to advise Petitioner that he could make a sentencing entrapment argument at sentencing if he pled

---

[4] In addition, John G. Oliva, Petitioner's prior counsel, in requesting to be relieved from representation, filed an affidavit with the Court explaining that he and the Petitioner had discussed the benefits and detriments of going to trial or entering a guilty plea on numerous occasions. (Affidavit of John G. Oliva, at ¶ c (Docket No. 85 in Case No. 3:02-00054). Mr. Oliva stated that Petitioner insisted on going to trial despite acknowledging that there was a substantial likelihood of conviction. (Id.) According to Mr. Oliva, "because he disliked the government's settlement offer, he was considering the possibility of securing a better sentence if it was determined by the court after trial." (Id.) Indeed, one of the complaints made by Petitioner in a letter to the Court requesting replacement of Mr. Oliva was that he strongly suggested that Petitioner enter into a plea agreement, while Petitioner wanted to look for his best option. (Letter from Richard Nanez dated November 8, 2002 (Docket No. 83 in Case No. 3:02-00054)).

guilty.[5]     Petitioner's claim that counsel advised him "all you can get is ten years" is contradicted by the record.  At the hearings on Petitioner's attempted guilty plea, counsel explained that the ten-year mandatory minimum sentence would apply if Petitioner pled guilty to the quantity alleged in Count One. (March 31, 2003 Hearing Transcript, at 18).  Indeed, the proposed Petition To Enter A Plea Of Guilty that was ultimately rejected by the Court states that Petitioner has been advised that the mandatory minimum sentence for Court One is ten years, and that the guideline range could be as high as 188 to 235 months. (Exhibit to Docket No. 111 in Case No. 3:02-00054).  The proposed Petition is signed by the Petitioner. (Id.)  This claim is without merit.     Petitioner also claims that shortly before sentencing, he had to make counsel aware of Sentencing Guideline Section 2D1.1, and its "critical import" in his case.  This

---

[5]   The Court notes that the sentencing entrapment defense was raised by Co-defendant Neal on appeal, and the court rejected the defense:

> Neal also claims sentencing entrapment, arguing that he was predisposed to deal only in small quantities of drugs and that the government induced him to deal in larger quantities to increase his sentence.  Sentencing entrapment is a legal theory that has been recognized by neither this court nor the United States Supreme Court. *See generally Sorrells v. United States*, 287 U.S. 435 (1932) (outlining two theories of entrapment, objective and subjective, neither of which applies to sentencing); *see also Sosa v. Jones,* 389 F.3d 644, 649 (6th Cir. 2004) ("[T]he theory of 'sentencing entrapment' would have to be recognized and applied in this case. . . [The defendant] has pointed to no Supreme Court precedent that [establishes] a federal prohibition of sentencing entrapment."); *United States v. Jones*, 102 F.3d 804, 809 (6th Cir. 1996) ("While other circuits have recognized sentencing entrapment, this circuit has never acknowledged sentencing entrapment. . . [W]e need not address whether this circuit should adopt the defense.") We decline Neal's invitation to recognize sentencing entrapment.  The record does not indicate that Neal's will was overcome or that he was inclined only to deal in small quantities.  He certainly anticipated large profits, which correspond to dealing in large quantities.  Thus, there is no occasion for us to consider adopting a doctrine of sentencing entrapment.

United States v. Nanez and Neal, 168 Fed. Appx. at 77, 2006 WL 388299, at **5.

Case 3:08-cv-01118   Document 13   Filed 05/19/09   Page 13 of 21 PageID #: 115

claim is also belied by the record.  At a hearing held several months before trial, counsel discussed the importance of Application Note 12 to Section 2D1.1, which relates to estimating drug quantities. (March 31, 2003 Hearing Transcript, at 12, 17).  Petitioner has offered no other evidence to support his allegation that counsel was unaware of the "critical import" of the guideline.

Petitioner appears to claim that the Court offered to continue the case after it rejected Petitioner's plea petition, and that counsel failed to consult with Petitioner about the continuance.  The record indicates, however, that on the same day the Court rejected Petitioner's plea petition, Co-defendant Neal requested and was appointed new counsel. (Docket No. 112 in Case No. 3:02-00054).  Consequently, the Court continued the trial in order to allow new counsel an opportunity to prepare for trial, and Petitioner was joined for trial with Mr. Neal. (Id.; April 1, 2003 Transcript, at 10-11).  Counsel did not request, nor did he join in any request, for the continuance.  In any event, Petitioner has not shown how he was prejudiced by the continuance.

Petitioner claims that counsel failed to advise him that he could seek severance of his case from Co-defendant Neal.  Petitioner has not shown, however, that he suffered prejudice by any failure to seek a severance as a severance was not warranted in this case.

Rule 8(b) of the Federal Rules of Civil Procedure provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Rule 14 provides that a defendant may be severed from the trial of another defendant "[i]f it appears that a defendant or the government is prejudiced by a joinder of . . . defendants."

14

"Courts typically favor the joinder of defendants charged with participating in the same act or series of acts because it is more efficient than conducting separate trials." United States v. Gibbs, 182 F.3d 408, 434 (6th Cir. 1999).  See also Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).   Defendants are not entitled to severance "merely because they may have a better chance of acquittal in separate trials." Zafiro, 113 S.Ct. at 938.

Courts presume that juries "are capable of sorting out the facts relevant to each individual defendant's case." Gibbs, 182 F.3d at 434.  The risk of prejudice to a defendant may be allayed, however, with a proper cautionary instruction, such as one instructing the jury to consider each defendant separately. Zafiro, 113 S.Ct. at 938; Gibbs, 182 F.3d at 434.

The Sixth Circuit has held that the general rule in conspiracy cases is that person indicted together should be tried together. United States v. Smith, 197 F.3d 225, 230 (6th Cir. 1999).  "In order to escape the general rule, the defendant must carry the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials." Id.  "The fact that each defendant attempts to lay the blame at the feet of the other defendants is not reason enough for a severance without a showing that the jury is unable to treat evidence applicable to each defendant distinctively." Id.

The Petitioner and Co-defendant Neal were charged with conspiracy, and were properly joined in the Indictment.  In addition, the Court specifically instructed the jury that they were to "separately consider the evidence against each defendant on each charge and to reach a separate verdict as to each one of them," and that "[y]our decision as to any one defendant or one charge, whether it's guilty or not guilty, should not influence your decision on the other defendant or charges." (Trial Transcript, Vol. III, at 570 (Docket No. 161) in Case No. 3:02-00054).  The Petitioner has offered no evidence that the jury failed to follow this instruction.  Nor has

Petitioner otherwise explained upon what basis counsel should have sought a severance from Co-defendant Neal. Accordingly, Petitioner has not met his burden of demonstrating that he was prejudiced by counsel's failure to request a severance in this case.[6]

Petitioner appears to claim that counsel was ineffective for failing to object to the introduction of notes from his proffer session with the Government. During cross examination, the prosecutor asked the Petitioner about statements he made during a proffer session in the presence of his attorney at the time and representatives of the Government. (Trial Transcript, Vol. III, at 426-30). In addition, during rebuttal at the trial, the Government called Detective Mike Clark to testify that during the proffer session, Petitioner stated that Co-defendant Neal had a friend who could provide the cocaine for a future deal. (Trial Transcript, Vol. III, at 491-500). On cross examination, Petitioner's trial counsel requested that Detective Clark provide his handwritten notes from the proffer session, and after reviewing those notes, counsel requested that they be marked as an exhibit but not admitted into evidence. (Id.)

Petitioner does not suggest upon what basis counsel should have objected to the cross examination questions or to the testimony of Detective Clark, nor does he explain why counsel's request to review Clark's notes rendered his assistance ineffective. See United States v. Velez, 354 F.3d 190 (2nd Cir. 2004)(Upholding waiver provision of proffer agreement permitting government to offer admission made in plea negotiations in rebuttal against any contradictory

---

[6] Petitioner's claim that counsel should have requested a "Bruton instruction" is without merit because Petitioner has not explained how Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) applied to the circumstances of his case. In Bruton, the Supreme Court ruled that a defendant is deprived of his Sixth Amendment confrontation right when incriminated by the introduction of a non-testifying co-defendant's confession at their joint trial. Both the Petitioner and Co-defendant Neal testified at trial. Petitioner has not shown that counsel was ineffective for any failure to request a Bruton instruction.

16

evidence or argument at trial); <u>United States v. Fifer</u>, 206 Fed. Appx. 502, 2006 Fed. App.

0848N (6th Cir. Nov. 20, 2006)(Affirming introduction of testimony of defendant's former

attorney regarding statements made during defendant's proffer in challenge under Rules 403,

408, and 410 of the Federal Rules of Evidence).   This claim is without merit.

Petitioner suggests that counsel should have called AUSA Koshy as a witness, but does

not specify what relevant information he would expect to adduce from such testimony.

Accordingly, this claim is without merit.

Petitioner also appears to argue that counsel should have objected to the involvement of

AUSA Koshy in the investigation of the case.  This issue was raised as an issue on appeal by Co-

defendant Neal and was rejected by the Sixth Circuit. See <u>United States v. Richard Nanez and</u>

<u>Kevin C. Neal</u>, 168 Fed.Appx. at 77-78, 2006 WL 388299, at ** 5:

> Neal's prosecutorial misconduct claim fails the plain error test; he cannot
> establish that prosecutorial misconduct caused a clear and obvious error in his
> trial.  Neal cannot even establish  prosecutorial misconduct, as he fails to
> demonstrate impropriety by AUSA Sunny Koshy.  Neal claims that Koshy, by
> trying a case he helped investigate, impermissibly vouched for the case and
> witnesses against Neal.  Impermissible vouching occurs when the prosecutor
> evidences his personal belief in any witness's credibility or implies personal
> knowledge of material facts unknown to the jury. . . Koshy did not imply that he
> had personal knowledge of the facts beyond the jury's reach, and he did not
> express a personal belief in any witness's credibility.  Contrary to Neal's
> argument, a prosecutor does not commit misconduct by coordinating with police
> during a criminal investigation and then taking the case to trial. . .

<u>United States v. Richard Nanez and Kevin C. Neal,</u> 168 Fed. Appx. at 77, 2006 WL 388299, at

** 5 (citation omitted).  As this issue is without merit, counsel was not deficient for any failure

to raise it.  <u>See</u>, <u>e.g.</u>, <u>Ludwig v. United States</u>, 162 F.3d 456, 458 (6th Cir. 1998)(Counsel is not

required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).[7]

Petitioner also claims that counsel operated under a conflict of interest due to his "friendship/relationship" with AUSA Koshy. Petitioner has offered no evidence supporting his claim of any friendship or relationship between Mr. Koshy and Mr. Lynch, certainly not a relationship that would rise to the level of a conflict of interest. Indeed, the record suggests that counsel acted as zealous advocate of Petitioner at trial and sentencing. This claim is without merit.

Finally, Petitioner claims Mr. Lynch should have advised him that he had no federal criminal defense experience. The Government has filed the affidavit of counsel, which indicates that prior to representing the Petitioner, counsel had worked for six months in the Narcotics and Dangerous Drugs Unit in the Criminal Division of the Department of Justice; had served as an Assistant United States Attorney for three years; and had tried approximately 35 to 40 cases in federal court. (Affidavit of Bob Lynch, at ¶ 3 (Docket No. 12-1)). Petitioner has offered no countervailing proof. This claim is without merit.

As for appellate counsel Broden, Petitioner argues that he failed to appeal the conviction, and the Court's rejection of Petitioner's guilty plea. As explained above, Petitioner has not stated upon what basis counsel should have challenged the Court's rejection of Petitioner's guilty plea. Petitioner has not otherwise specified any other issues that appellate counsel should have raised to challenge Petitioner's conviction. This claim is without merit. Ludwig v. United States, 162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective

---

[7] The Court notes, however, that counsel did refer to the role of AUSA Koshy in the investigation throughout the trial, and as part of the "theory of defense" instruction he requested that the Court give the jury. (Trial Transcript, Vol. III, at 375-77; 591-94).

18

assistance of counsel).

Petitioner claims that at his re-sentencing hearing, counsel Bruno was ineffective in failing to object to the Court's statements about the "heartland." According to the Petitioner, this language is no longer applicable to sentencing after issuance of the <u>Booker</u> decision.

After the <u>Booker</u> decision, a defendant may request a sentence below the range set forth in the Sentencing Guidelines either based on factors set forth in Chapter 5, Part K, of the Guidelines (often called a "departure"), and/or based on the factors set forth in 18 U.S.C. § 3553(a) (often called a "variance" or "non-Guideline departure"). <u>United States v. Jordan,</u> 544 F.3d 656, 671 n. 12 (6th Cir. 2008); <u>United States v. Cousins,</u> 469 F.3d 572, 577 (6th Cir.2006), *overruled in part on other grounds by* <u>Irizarry v. United States,</u> ___ U.S. ___, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008). A departure based on Chapter 5, Part K, requires a finding that the circumstances present an "atypical case" that falls outside the "heartland" to which the United States Sentencing Commission intends each individual Guideline to apply. <u>Rita v. United States,</u> 551 U.S. 338, 127 S.Ct. 2456, 2461, 168 L.Ed.2d 203 (2007); U.S.S.G. 5K2.0(a)(2).

In this case, the Court considered counsel's arguments at sentencing both as a request for a downward departure from the applicable guideline range under Chapter 5, Part K, of the Guidelines, and as a request for a non-guideline sentence under Section 3553(a):

> . . . On the motion for downward departure, I don't believe in terms of a guideline departure that this case is outside the heartland. The defendant relies on sentencing disparity between co-defendants, his family circumstances, rehabilitation, aberrant behavior, and previously relied on the medical hardship of his mother and generally the totality of the circumstances. There is not a basis for guideline departure. It is not outside the heartland. The Court is aware of its authority to grant a downward departure from the guidelines but declines to do so.
>
> Now the *new question* presented is under Section 3553(a) whether a non-guideline sentence should be imposed. In terms of the nature and circumstances of the offense, this is a serious offense. Major drug crime. In terms of the history and

characteristics of the defendant, Mr. Nanez has other vocational opportunities. He is not beyond redemption in the opinion of the Court. He is capable of conforming his conduct to the law.

Regarding the sentence reflecting the seriousness of the offense, in the Court's view a guideline sentence is necessary to do that. That's what's necessary to promote respect for the law and provide just punishment in this particular case and particularly to provide adequate deterrence and to protect the public. A case involving this significant amount of cocaine is a very serious matter, and it is the opinion of the Court that the guideline range is the appropriate sentencing level.

(Transcript of Re-sentencing Hearing, at 59-60 (Docket No. 227 in Case No. 3:02-00054)

(emphasis added)).

In addition, in the Court's Rule 32(c)(1) Findings And Determinations Regarding

Objections To Presentence Investigation Report (Docket No. 223 in Case No. 3:02-00054), the

Court addressed counsel's argument for a reduced sentence as one for downward departure and

also as one for a non-guideline sentence under two separate headings: "2. Defendant's Motion

for a Sentence Below the Advisory Guideline Range;" and "9. Defendant's Motion for a

Downward Departure."

The Court's reference to the "heartland" related to its consideration of the request for a

departure under Chapter 5, Part K, of the Guidelines. The Court did not refer to the "heartland"

in analyzing the request for a departure under Section 3553(a). As the Court did not err in

considering counsel's request for a sentence below the applicable guideline range, counsel had

no basis for objecting to the Court's reasoning. Thus, counsel was not ineffective for failing to

make such an objection.

Finally, Petitioner argues that the totality of counsels' errors require that his conviction

and sentence be vacated. As the Court has not found merit in any of Petitioner's claims of error,

this claim is also without merit.

For the reasons discussed above, despite his numerous objections, Petitioner has not shown that he received the ineffective assistance of counsel. Thus, the Court concludes that Petitioner's ineffective assistance claims are without merit and are dismissed.

### IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE